United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIRECTV, Inc., a California corporation,<br><br>        Plaintiff,<br><br>  v.<br><br>ELAINE HENDRIX,<br><br>        Defendant.<br>_____/ | No. C-04-0370 JSW (EMC)<br><br>**REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br>**(Docket Nos. 18, 21)** |

On November 2, 2004, Plaintiff DirecTV, Inc. ("DirecTV") moved for default judgment against Defendant Elaine Hendrix. Judge Jeffrey S. White has referred the motion for default judgment to the undersigned for a Report and Recommendation.

### I.    **FACTUAL & PROCEDURAL BACKGROUND**

On January 28, 2004, DirecTV filed a complaint against Ms. Hendrix for violation of the Federal Communications Act of 1934, *see* 47 U.S.C. § 605; the Electronic Communications Privacy Act, *see* 18 U.S.C. §§ 2510-2521 (commonly referred to as the Wiretapping Act); the Digital Millennium Copyright Act, *see* 17 U.S.C. § 1201; and California common and statutory law. In its complaint, DirecTV alleged as follows: DirecTV is a direct broadcast satellite provider. *See* Compl. ¶ 2. In executing a civil writ of seizure, DirecTV obtained business records from EQ Stuff.Org, an internet distribution company for illegal satellite signal theft devices, and learned that Ms. Hendrix had purchased approximately 200 signal theft devices. *See id.* ¶¶ 27, 29. The devices consisted of 100 "EQ Bootloaders," 50 "EQ Zapulators," and 50 "EQ Programmers," *see* Kash Decl., Ex. B, all

**United States District Court**
For the Northern District of California

of which are designed and marketed for the purpose of circumventing DirecTV's conditional access controls and have no other legitimate use. *See id.* ¶ 5 & Exs. C-D. Ms. Hendrix distributed, trafficked, and/or resold the devices in interstate commerce and, by doing so, she directly and intentionally facilitated the unauthorized reception and decryption of DirecTV's satellite television programming. *See* Compl. ¶¶ 29, 30. DirecTV's complaint sought, *inter alia*, injunctive relief, statutory damages and/or compensatory and punitive damages, and reasonable attorney's fees and costs.

DirecTV served the summons and complaint on Ms. Hendrix on February 4, 2004. *See* Kash Decl. ¶ 6. Because Ms. Hendrix failed to respond, the Clerk of the Court, upon DirecTV's request, entered Ms. Hendrix's default on May 13, 2004. *See id.* ¶ 8. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Televideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-18 (9th Cir. 1987) (internal quotation marks omitted).

On November 2, 2004, DirecTV filed this motion for default judgment against Ms. Hendrix. In the motion, DirecTV sought injunctive relief pursuant to various statutes but asked for monetary damages pursuant to 47 U.S.C. § 605(e)(4) only.

## II. DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure 55, a court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service. *See* Fed. R. Civ. P. 55(b)(2). Ms. Hendrix is not any of the aforementioned persons, *see* Kash Decl. ¶ 9, so the Court may proceed with its analysis.

The disposition of a motion for default judgment lies within the discretion of the court. *See Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980) ("The district court's decision whether to enter a default judgment is a discretionary one.").

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning

2

>material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

B.  <u>18 U.S.C. § 2520 and 17 U.S.C. § 1201</u>

As noted above, in its motion for default judgment, DirecTV asked for injunctive relief on the basis that Ms. Hendrix, through her actions, had violated 18 U.S.C. § 2520 and 17 U.S.C. § 1201. Because, as discussed *infra*, the Court recommends that the injunctive relief sought by DirecTV be awarded pursuant to another statute, the Court need not address whether default judgment is warranted with respect to these statutes.

C.  <u>47 U.S.C. § 605(a)</u>

In its motion for default judgment, DirecTV further sought injunctive relief because Ms. Hendrix had violated 47 U.S.C. § 605(a). Section 605(a) states in part as follows:

>Except as authorized by chapter 119, Title 18, no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpoena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. . . .

3

47 U.S.C. § 605(a). The Third Circuit has interpreted § 605(a) as prohibiting parties from pirating or intercepting satellite transmissions. *See TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 200 (3d Cir. 2001). Section 605(a) applies not only to end users of signal theft devices but also to those who assist others in pirating or intercepting satellite transmissions. *See* 47 U.S.C § 605(a); *see also id.* § 605(b) (providing for exceptions to § 605(a) and explaining that "assisting" in the interception or receipt of satellite cable programming includes "manufacture or sale" of devices).

In its complaint, DirecTV alleged that Ms. Hendrix purchased over 200 signal theft devices and that, by selling those devices, she assisted others in receiving DirecTV's unauthorized satellite transmissions. *See* Compl. ¶¶ 29, 36. In addition, the facts as alleged (the purchase of 200 devices) raise a strong inference that these purchases were made not for personal use but to assist others in intercepting transmission. Taking these allegations as true, the Court concludes that DirecTV has stated a valid claim for a violation of § 605(a) and, consequently, the second and third *Eitel* factors weigh in favor of a default judgment.

Consideration of the other *Eitel* factors also supports the Court's conclusion that default judgment is warranted. For example, there is a significant possibility of prejudice to DirecTV if default judgment is not granted. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). If Ms. Hendrix has more devices to sell or distribute, additional injury will be inflicted on DirecTV. In addition, because Ms. Hendrix has not filed an answer to the complaint, there is little to suggest that there is a dispute concerning material facts, and there is no evidence suggesting that the failure to respond to the complaint is the result of excusable neglect. The Court acknowledges that "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472, and that the monetary damages sought by DirecTV are substantial. *See Pepsico*, 238 F. Supp. 2d at 1176 (stating "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"); *see also Bd. of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065 (N.D. Cal. Dec. 29, 2000) (holding that default judgment is favored where "[t]he amount at stake is minor in comparison to the potential loss . . . as a result of defendants' conduct.").

1  However, on balance, the Court concludes that the *Eitel* factors weigh in favor of awarding default
2  judgment.
3     Because a default judgment is warranted in the instant case with respect to § 605(a), the
4  Court now turns to the issue of injunctive relief. Section 605(e)(3)(B)(i) provides that a court "may
5  grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain
6  violations of subsection (a)." § 605(e)(3)(B)(i). Given the large number of signal theft devices
7  purchased and distributed by Ms. Hendrix, as well as the harm that DirecTV will suffer in the
8  absence of injunctive relief, the Court recommends that an injunction be issued, enjoining Ms.
9  Hendrix from assisting others in receiving unauthorized DirecTV satellite transmissions of television
10 programming.[1]

11 D.   47 U.S.C. § 605(e)(4)

12    Finally, in its motion for default judgment, DirecTV sought monetary damages under §
13 605(e)(4).[2] Courts have held that § 605(e)(4) is meant to target upstream manufacturers and
14 distributors of illegal pirating access devices. *See DirecTV, Inc. v. Albright*, No. 03-4603, 2003 U.S.
15 Dist. LEXIS 23811, at *7 (E.D. Pa. Dec. 9, 2003); *DirecTV, Inc. v. Borich*, No. 1:03-2146, 2004
16 U.S. Dist. LEXIS 18899, at *8-9 (S.D. W. Va. Sept. 17, 2004); *see also DirecTV, Inc. v. McDougall*,
17 No. SA-03-CA-1165-XR, 2004 U.S. Dist. LEXIS 23013, at *9 (W.D. Tex. Nov. 12, 2004) (where
18 the court found that DirecTV alleged a proper violation of § 605(e)(4) because the defendant sold or
19 distributed pirate access devices). Essentially, three elements must be shown to establish a violation
20 of § 605(e)(4): (1) the defendant distributed or sold equipment; (2) the equipment primarily assisted

---

[1] In its motion for default judgment, DirecTV also asked that Ms. Hendrix be enjoined from intercepting DirecTV's satellite signals illegally. However, in its complaint, DirecTV did not make any concrete allegations that Ms. Hendrix was an end user as opposed to a reseller. In parts of its complaint, DirecTV invoked the language of § 605(a), *see* Compl. ¶ 33, but the thrust of its claims against Ms. Hendrix was that she was distributing, trafficking, and/or reselling pirate access devices in interstate commerce. Since DirecTV did not allege a specific claim that Ms. Hendrix is an end user, injunctive relief under § 605(a) should be limited to enjoining Ms. Hendrix from assisting others in receiving DirecTV's unauthorized satellite transmissions.

[2] DirecTV also sought injunctive relief for a violation of § 605(e)(4); however, § 605 affords injunctive relief for violations of § 605(a) only. *See* 47 U.S.C. § 605(e)(3)(B) (providing that a court "may grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)").

5

in decrypting satellite signals; and (3) the defendant knew or had reason to know that the equipment primarily aided the unauthorized use of such signals. *See DirecTV, Inc. v. Little*, No. CV-03-2407 RMW, 2004 U.S. Dist. LEXIS 16350, at *17 (N.D. Cal. Aug. 12, 2004) (citing, *inter alia*, *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (9th Cir. 1996)). Under the statute, "the prohibited activity . . . as it applies to each such device shall be deemed a separate violation." § 605(e)(4).

In the instant case, DirecTV alleged in its complaint that: Ms. Hendrix purchased over 200 signal theft devices and that she distributed them, knowing or having reason to know that the devices are primarily of assistance in the unauthorized decryption of DirecTV's satellite transmissions, for the purpose of commercial advantage or private financial gain. *See* Compl. ¶¶ 29, 38, 40, 41. Again the sheer number of devices purchased by Ms. Hendrix supports the conclusion that these were purchased for resale to others to facilitate interception of satellite transmission. Taking these allegations as true, the Court concludes that DirecTV has stated a valid claim for relief under § 605(e)(4), and therefore the second and third *Eitel* factors weigh in favor of a default judgment. On balance, the remaining *Eitel* factors also weigh in favor of a default judgment. The Court therefore recommends that default judgment be granted pursuant to § 605(e)(4).

As for damages, any person aggrieved by a violation of § 605(e)(4) may seek damages under 47 U.S.C. § 605(e)(3)(C). *See id.* § 605(e)(3)(C). That section provides that an aggrieved party may recover actual damages or statutory damages. With respect to statutory damages, the statute provides: "[F]or each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just."[3] *Id.* § 605(e)(3)(C)(i)(II). In its motion for default judgment, DirecTV asked for statutory damages in the amount of $10,000 for each signal device sold. *See* Mot. at 13.

---

[3] It appears, the court can decrease the award of statutory damages to not less than $250 if the court "finds that the violator was not aware and had no reason to believe that his acts constituted a violation of § 605." 47 U.S.C. §605(e)(3)(C)(iii). The court can also increase the award of statutory damages to not more than $100,000 if the court finds the violation to have been committed willfully and for direct or indirect commercial advantage or private financial gain. *See id.* § 605(e)(3)(C)(ii).

6

Courts have great discretion in awarding statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C). *See Kingvision Pay-Per-View, Ltd. v. Scott E's Pub., Inc.*, 146 F. Supp. 2d 955, 958-59 (E.D. Wis. 2001) (finding that a court has great discretion in awarding statutory damages under § 605); *Decroce*, 332 F. Supp. 2d at 721 (finding that § 605(e)(3)(C) gives the court considerable latitude in awarding fair damages according to the specific facts of the case). Courts consider "both the nature of the violation in light of the statutory scheme involved, as well as the particular circumstances concerning the defendant's actions." *See Nat'l Satellite Sports, Inc. v. Garcia*, No. Civ.A. 301CV1799D, 2003 U.S. Dist. LEXIS 10315, at *2 (N.D. Tex. June 18, 2003); *see also DirecTV, Inc. v. Adkins*, 320 F. Supp. 2d 474, 476-77 (W.D. Va. 2004) (finding that Congress's evident purpose to prohibit black market distribution of unlawful decryption devices and to punish resellers more harshly than end users prompted the court to impose a $10,000 per device damage award on the defendant). In one case, a court considered the following factors in making a § 605(e)(4) damage assessment: (1) the pecuniary loss sustained by the victim as result of the offense, (2) the financial resources of the defendant, (3) the financial needs and earning ability of the defendant, and (4) the burden a damage award would impose on the defendant verses the burden alternative relief would impose. *See TWC Cable Partners d/b/a Staten Island Cable v. Bravo*, No. 94-CV-3250 (JMA), 1996 U.S. Dist. LEXIS 22462, at *11 (E.D.N.Y. Mar. 29, 1996) (finding that the defendant sold seven illegally modified converters; he was not engaged in a large scale scheme to defraud plaintiff, and the goals of punishment, restitution and deterrence are met by imposing the minimum statutory damages in the amount of $10,000 for each violation of § 605(e)(4)).[4]

---

[4] Factors used to assess damages under § 605(a) may provide persuasive reasoning in assessing § 605(e)(4) damages. They include: (1) considering the nature of the violation in light of the statutory scheme involved, as well as whether the defendant profited as a result of his violation, *see DirecTV, Inc. v. Perrier*, No. 03-CV-400S, 2004 U.S. Dist. LEXIS 9258, at *11 (W.D.N.Y. Mar. 15, 2004); (2) whether the plaintiff suffered financial loss because of the violation, *see DirecTV, Inc. v. Mitchell*, No. 2:03CV386, 2004 U.S. Dist. LEXIS 22570, at *1 (E.D. Va. Sept. 10, 2004); (3) the duration of the defendant's misconduct, *see id.*; (4) the reason for the defendant's misconduct, *see id.*; (4) whether the defendant reasonably believed that his or actions were legal, *see id.*; (5) whether the defendant was already punished in a different proceeding, *see id.*; (6) whether the defendant assisted or induced others in violating the statute, *see Perrier*, 2004 U.S. Dist. LEXIS 9258, at *11; (7) whether the defendant's violation was willful, *see Albright*, 2003 U.S. Dist. LEXIS 23811, at *8; (8) the deterrent value of the damage award, *see id.*; and (9) whether the damage award is comparable to awards in similar cases. *See Perrier*, 2004 U.S. Dist. LEXIS 9258, at *11.

Within the exercise of its discretion, there is no statutory authority for the Court to award less than $10,000, at least if it does not find the violator was not aware or had reason to believe his acts violated § 605(a). 47 U.S.C. § 605(e)(3)(C)(iii). Every court that has addressed damages under this section has awarded the statutory minimum of $10,000 per device. (See cases listed below). The only variance lies in whether the courts assume one of the devices was possessed for personal use and thus is not included in the $10,000 per device assessment.

Thus, some courts have awarded the minimum statutory amount of $10,000 and multiplied that figure by the number of devices minus one device that was believed to have been for personal use. *See Cablevision of S. Conn.*, 141 F. Supp. 2d 277 (concluding that defendant sold or distributed 19 of the 20 decoders, excluding the one decoder that defendant employed for personal use); *McDougall*, 2004 U.S. Dist. LEXIS 23013, at *14 (finding that defendant resold or distributed seven of the eight devices he purchased and kept one for his own personal use; the court awarded $70,000 for the seven devices and $1,000, in violation of § 605(a), for the device associated with personal use). Other courts have multiplied the $10,000 minimum statutory figure by the total number of devices. *See Adkins*, 320 F. Supp. 2d at 477 (granting DirecTV an award of $10,000 per device for a total award of $2,050,000 against defendant); *DirecTV, Inc. v. Albright*, No. SACV-03-1532-JVS (C.D. Cal. Aug. 18, 2004) (granting default judgment in the amount of $210,000 resulting from defendant's purchase, use, and resale of twenty-one devices in violation of § 605(e)(4)); *DirecTV, Inc. v. Naegle*, SACV 03-818-JVS (C.D. Cal. Oct. 27, 2003) (granting default judgment in the amount of $450,000 resulting from defendants forty-five violations); *DirecTV, Inc. v. McGreevey*, SACV 03-1103-JVS (C.D. Cal. Oct. 28, 2003) (granting default judgment in the amount of $220,000 resulting from defendant's twenty-two violations).

Taking into account the above cases, the Court recommends that the damage award in the instant case be limited to $10,000 per device. No less than $10,000 should be awarded because there is no indication that Ms. Hendrix was "not aware" or "had no reason to believe" her act violated § 605. *See* § 605(e)(3)(C)(iii). The sheer number of devices purchased by Ms. Hendrix evidences Ms. Hendrix's knowledge of her actions. No more than $10,000 per device should be awarded since DirecTV asked for only the statutory minimum in its motion for default judgment.

1  Moreover, as there are 200 devices at issue, the total amount of damages is $2,000,000, a sum that
2  would easily deter Ms. Hendrix and others similarly situated from future violations. The Court does
3  not assume that Ms. Hendrix may have used one of the 200 devices for personal use as there is
4  nothing before the Court to suggest that she was an end user as well as a reseller. No such allegation
5  was made by DirecTV.

6  The Court acknowledges that the $2,000,000 award is a substantial one, especially given that
7  Ms. Hendrix is an individual and not a corporation. However, Congress has made the determination
8  that large awards against resellers are appropriate, and the Court is not in a position to question that
9  judgment, especially when there is no indication that Ms. Hendrix believed her actions to be legal or
10 that the signal theft devices have a legitimate use. *See* Kash Decl. ¶ 5 & Exs. C-D. There is also a
11 greater need to deter a reseller of signal theft devices as opposed to an end user, especially in
12 situations in which, as in the instant case, the reseller is selling hundreds of illegal devices.

13 E.     Attorney's Fees and Costs

14 Finally, the Court recommends an award of costs, including reasonable attorney's fees,
15 incurred in filing this motion for default judgment. *See* § 605(e)(3)(B)(iii) (providing that the court
16 "shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved
17 party who prevails"). DirecTV seeks $2,495 for its costs and fees in filing the complaint, service of
18 the summons and complaint, and the taking of Ms. Hendrix's default. The Court has reviewed the
19 request and finds that the time and cost expended are reasonable. Therefore, the Court recommends
20 that DirecTV be awarded $2,495 in reasonable attorney's fees and costs.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

### III.   CONCLUSION

For the foregoing reasons, the Court hereby recommends as follows:

(1)   That DirecTV's motion for default judgment be GRANTED with respect to § 605(a) and that Ms. Hendrix be enjoined from assisting others in receiving DirecTV's unauthorized satellite transmissions of television programming; and

(2)   That DirecTV's motion for default judgment be GRANTED with respect to § 605(e)(4) and that DirecTV be awarded $2,000,000 as statutory damages as well as attorney's fees in the amount of $2,495.

Any party may serve and file specific written objections to this Recommendation within ten (10) days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); Civ. L.R. 72-3.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated:  April 1, 2005

_____/s/_____<br>
EDWARD M. CHEN<br>
United States Magistrate Judge